**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **THE MEDICAL PROTECTIVE COMPANY**, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:15-CV-0366-L** |
| **DAVID L. TURNER, M.D.**, | § § | |
| Defendant, | § § | |
| v. | § § | |
| **HALEH KARIMIAN and NORTH TEXAS FAMILY PRACTICE ASSOC., P.A.**, | § § § § | |
| Interested Parties. | § § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are: North Texas Family Practice Assoc., P.A.'s Motion to Dismiss and Brief in Support, filed March 31, 2015 (Doc. 9); and Plaintiff's Motion for Summary Judgment, filed April 1, 2015 (Doc. 11). Having considered the motions, responses, reply,[1] record, and applicable law, the court **grants** North Texas Family Practice Assoc., P.A.'s Motion to Dismiss, and **grants** Plaintiff's Motion for Summary Judgment.

**I.     Factual Background and Procedural History**[2]

Plaintiff The Medical Protective Company ("Plaintiff" or "MedPro") insured Defendant David L. Turner, M.D. ("Dr. Turner" or "Defendant") under a claims-made professional liability

---

[1] North Texas Family Practice Assoc., P.A. did not file a reply brief in further support of its motion.

[2] The facts are undisputed unless otherwise noted.

insurance policy, Policy No. 561689 (the "Policy"), for the period beginning December 9, 2012, and ending December 9, 2013. Pl. Summ. J. App. 1-44 (Policy) (Doc. 13). The Policy provided Dr. Turner a defense and personal liability coverage in the amount of $200,000 per claim (*id.* at 5), for "any claim first made, or potential claim first brought to the Insured's attention, during the term of this policy based upon professional services rendered, or which should have been rendered . . . in the practice of the Insured's profession[.]" *Id.* at 20 (Endorsement 828).

On September 24, 2013, Dr. Turner's employer, North Texas Family Practice Assoc., P.A. ("NTFPA"), tendered a lawsuit pending in Dallas County, Texas, and requested that MedPro defend and indemnify named Defendant Dr. Turner under the terms of the Policy. This lawsuit is *Haleh Karimian v. David L. Turner, M.D.*, Cause No. CC-14-03908-A, pending in the County Court at Law No. 1 of Dallas County, Texas (the "Underlying Lawsuit"). *Id.* at 45-50 (Pl.'s First Am. Pet.). The First Amended Petition ("Petition") is the current trial pleading in the Underlying Lawsuit. In the Petition, Haleh Karimian ("Karimian") alleges that Dr. Turner, who "had been her primary care physician for over ten years[,]" "assaulted [her], resulting in [her] loss of consciousness," and then "sexually assaulted her while she was unconscious." *Id.* at 46-47, Pet. ¶¶ 7, 10. Karimian asserts three causes of action against Dr. Turner: assault, offensive physical contact, and sexual exploitation by a mental health services provider in violation of Chapter 81 of the Texas Civil Practice and Remedies Code. *Id.* ¶¶13-17. MedPro has tendered a defense to Dr. Turner subject to a reservation of rights.

On February 6, 2015, MedPro filed this declaratory judgment action against Dr. Turner, as well as against "interested parties" Karimian and NTFPA, alleging that: (1) "[i]n the underlying lawsuit, Ms. Karimian alleges that Dr. Turner physically and sexually assaulted her[]"; (2) "[t]he

**Memorandum Opinion and Order - Page 2**

Policy does not provide coverage for the alleged physical and/or sexual assault referenced in Ms. Karimian's current trial pleading[]"; and (3) "[t]herefore, MedPro has no duty to defend and no duty to indemnify with respect to the underlying lawsuit." Pl.'s Orig. Compl. for Decl. J. ¶ 15 ("Compl.") (Doc. 1).  MedPro requests that the court enter a declaratory judgment "determining the rights and other legal relations of MedPro, Dr. Turner and the Interested Parties pursuant to the insuring clause and other provisions of the Policy[,]" and "enter a declaratory judgment declaring that MedPro (1) has no duty to defend Dr. Turner (or anyone else) in the underlying lawsuit and (2) no duty to indemnify Dr. Turner (or anyone else) for any settlement or judgment relating to the claim asserted in the underlying lawsuit." *Id.* ¶ 27.

Plaintiff MedPro has filed a motion for summary judgment on its declaratory judgment action.  Interested Party NTFPA has filed a motion to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motions have been fully briefed and are ripe for decision.

## II.   Plaintiff's Motion for Summary Judgment

MedPro moves for summary judgment on its declaratory judgment action, in which it requests a judgment declaring it has no duty to defend or indemnify Dr. Turner in connection with the claims asserted against him in the Underlying Lawsuit.  Dr. Turner opposes the motion, arguing that under the Policy's terms, he is entitled to a defense and liability coverage in connection with the Underlying Lawsuit.  Prior to addressing the parties' arguments, the court sets forth the applicable legal standard it will use in resolving the motion for summary judgment.

### A.       Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at 587.  (citation omitted).  Mere conclusory allegations are not competent summary judgment

evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## B.     Analysis

### 1.     *The Insurer's Duty to Defend and Indemnify*

The interpretation of an insurance policy is a question of law. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). State law rules of construction govern in a diversity case such as this one. *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995). "Texas law is clear that insurance policies are subject to the same rules of construction generally applicable to contracts." *Quorum Health Res. v. Maverick Cnty. Hosp.*, 308 F.3d 451, 468 (5th Cir.

2001) (citation omitted); *see also Burnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987) (same).

As the insured, Dr. Turner "has the burden of establishing coverage under the terms of the policy." *Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). Under Texas law, "[t]he petition's allegations and the policy's language determine the insurer's duty to defend." *Farmers Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). Texas courts refer to this as the "complaint-allegation" rule or the "eight-corners" rule. *National Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Under the "eight-corners" rule, "[t]he court compares the four corners of the insurance policy with the four corners of the plaintiff's pleading to determine whether any claim alleged by the pleading is potentially within the policy coverage." *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998). When reviewing the underlying pleadings, courts must focus on the factual allegations pled rather than on the legal theories alleged, and "give the allegations in the petition a liberal interpretation." *National Union Fire Ins. Co.*, 939 S.W.2d at 141. "The duty to defend is determined 'without reference to the truth or falsity of such allegations.'" *Guaranty Nat'l Ins. Co.*, 143 F.3d at 193 (*quoting Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965)). Following the "eight-corners" rule, "[i]f a petition does not allege facts within the scope of coverage, an insurer is not legally obligated to defend a suit against its insured." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) (citation omitted). Courts resolve all doubts regarding a duty to defend in favor of the duty. *Id.*

Unlike the duty to defend, which is "strictly circumscribed by the eight-corners doctrine, it is well established that the facts actually established in the underlying suit control the duty to

indemnify." *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009) (internal quotation marks and citation omitted). Although in some instances it may be necessary to defer resolution of indemnity issues until after the underlying litigation is resolved, "[t]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend will likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Cnty. Mut. Ins. Co.*, 955 S.W.2d at 84 (Tex. 1997).

The insured bears the burden of establishing that its liability is within coverage of the policy. *Utica Nat'l Ins. Co. of Texas v. American Indem. Co.*, 141 S.W.3d 198, 2013 (Tex. 2004). The insurer has the burden of proving the applicability of an exclusion on the policy. *Guaranty Nat'l Ins. Co.*, 143 F.3d at 193.[3] "It is well established that insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage." *Puckett v. United States Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). "This rule does not apply, however, when the term in question is susceptible of only one reasonable construction." *Id.* "When there is no ambiguity, it is the court's duty to give the words used their plain meaning." *Id.*

### 2. Summary of the Parties' Arguments

In support of its motion for summary judgment, MedPro argues that it "has no duty to defend because the sex claim asserted against Dr. Turner in the underlying lawsuit falls outside the scope of the insuring clause of the Policy, and therefore is not covered by the Policy." Pl.'s Mot. Summ. J. 8. MedPro further argues that for "this same reason, there is absolutely no possibility that MedPro

---

[3] "Under Texas law, the burdens of proof in a declaratory judgment action brought by an insurer seeking a declaration of non-coverage are the same as they would be if the action had been brought by the insured against the insurance company claiming the existence of coverage for a particular claim or event." *Jim Johnson Homes, Inc. v. Mid-Continent Cas. Co.*, 244 F. Supp. 2d 706, 714 (N.D. Tex. 2003) (citations omitted).

will ever have a duty to indemnify." *Id.* In opposition, Dr. Turner contends that MedPro has a duty to defend him because the Petition in the Underlying Lawsuit "alleges a claim that is within, or potentially within, the [P]olicy's coverage." Def.'s Br. Resp. to Pl.'s Mot. Summ. J. 6 ("Def.'s Resp. Br.") (Doc. 18). He further argues that MedPro's "claim that it has no duty to indemnify [him] is not yet justiciable or ripe for adjudication[.]" *Id.* at 1. The court first considers MedPro's motion for summary judgment on the duty to defend.

### 3. *The Duty to Defend*

As previously explained, *see supra* Sec. II.B.1, under the "eight-corners" rule, the court may look only to the allegations in the Petition and the terms of the Policy to determine whether MedPro has a duty to defend Dr. Turner in the Underlying Lawsuit. The court turns first to the relevant allegations in Karimian's live pleading in the Underlying Lawsuit.

### a. *The Petition in the Underlying Lawsuit*

Karimian alleges that Dr. Turner, who "had been her primary care physician for over ten years[,]" "assaulted [her], resulting in [her] loss of consciousness" and then "sexually assaulted her while she was unconscious." Pl.'s Summ. J. App. at 46-47, Pet. ¶¶ 7,10. More specifically, Karimian alleges:

> On Thursday, September 20, 2012, Plaintiff phoned the office of Defendant Turner requesting prescription refills. Plaintiff was out of one particular medication and needed others refilled. Plaintiff was ultimately told by Defendant Turner's staff that she would have to see Defendant Turner in the office [in] order to obtain her prescription refills. Plaintiff made an appointment to see Defendant Turner on Thursday, September 27, 2014.

> Defendant Turner's treatment of Plaintiff included assessment, diagnosis and treatment for mental or emotional illness, symptoms, conditions or disorders, including depression, anxiety and panic attacks. Defendant Turner prescribed several antidepressant medications for Plaintiff over a period of many years.

**Memorandum Opinion and Order - Page 8**

On Friday, September 21, 2014, Plaintiff received a text message from Defendant Turner leading to an exchange of text messages regarding the requested prescription refills.  It was agreed that Plaintiff would see Defendant Turner at his office on Saturday, September 22, 2014, to get her prescription refills.

On Saturday, September 22, 2014, Plaintiff's husband drove Plaintiff to Medical City and Plaintiff went to Defendant Turner's fourth floor office while her husband waited in the car.  Defendant Turner told Plaintiff to go into the examination room. In the examination room, Defendant Turner assaulted Plaintiff, resulting in Plaintiff losing consciousness.  When Plaintiff regained consciousness, she discovered that Defendant Turner had sexually assaulted her while she was unconscious.

Following the physical and sexual assault by Defendant Turner, Plaintiff sought emergency medical treatment ar Medical City of Dallas and Parkland Hospital and she reported the assault to the Dallas Police Department.

As a result of the assault by Defendant Turner, Plaintiff sustained injuries and damages.

*Id.* ¶¶ 7-12.

### b.   The Policy

The claims-made professional liability policy in this case covers claims for damages based on "professional services rendered, or which should have been rendered."  Specifically, the Policy provides, in relevant part:

In consideration of the payment of the premium and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to defend and pay damages, in the name and on behalf of the Insured or his or her estate,

A.   In any claim first made, or potential claim first brought to the Insured's attention, during the term of this policy **based on professional services rendered, or which should have been rendered** . . . in the practice of the Insured's profession as hereinafter limited and defined.

*Id.* at 20 (Endorsement 828) (emphasis added).  The Policy defines "professional services" in relevant part, as follows:

**Memorandum Opinion and Order - Page 9**

5.      The phrase "professional services" shall only include the following:

(a)      the rendering of medical, surgical, dental, or nursing services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insured's practice as a licensed health care provider. This shall include first aid rendered at the scene of an accident without the expectation of monetary compensation.

*Id.* at 21 (Endorsement 828). The Policy defines "claim" as "an express written demand for money as compensation for damages." *Id.* The Policy also contains the following exclusion:

EXCEPT THIS POLICY DOES NOT COVER

\* \* \*

2.      Payment of damages (but will defend) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act.

*Id.* at 3 ("Exclusion No. 2").

c.      *Discussion*

Having set forth the relevant allegations made by Karimian in the Underlying Lawsuit and the pertinent terms of the Policy, the court now addresses whether the allegations fall within the coverage provisions of the Policy. As already noted, the insured, Dr. Turner "has the burden of establishing coverage under the terms of the policy." *Gilbert Texas Constr., L.P.*, 327 S.W.3d at 124.

Dr. Turner argues that the factual allegations in the Petition "come within, or at least potentially come within, the coverage language of the policy, which obligates [MedPro] to defend [him] in the underlying lawsuit." Def.'s Resp. Br. 5-6. After setting out portions of the pleadings, Dr. Turner summarizes his position as follows: "[A]ccording to the petition, the alleged physical and

sexual 'assaults' arose out of or occurred in connection with Dr. Turner's rendition or failure to render professional medical treatment that was being sought by Karimian—*i.e.*, during an office visit and examination for the purpose of obtaining prescription refills." *Id.* at 5.  In addition, Dr. Turner argues that a duty to defend is expressly stated under Exclusion No. 2 to the Policy which provides that MedPro will not pay damages, but will defend, "any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sex act."  In reply, MedPro contends that Dr. Turner has not satisfied his burden of showing "that his non-consensual sex with Mrs. Karimian somehow constituted a 'professional service' within the scope of coverage of his professional liability insurance policy . . . It cannot be a 'professional service' for a doctor to have non-consensual sex with a patient."  Reply 1 (Doc. 19).  MedPro further counters that Dr. Turner's attempt to expand coverage by referring to an exclusion in the Policy "confus[es] the basic structure of an insurance policy . . . [and] Dr. Turner cannot ignore the scope of coverage set out in the *insuring clause* of his policy, and then argue that different, additional coverage is somehow created by a *policy exclusion*."  *Id.* at 2 (original emphasis).  The court agrees.

Construing the unambiguous terms of the Policy, including the definition of "professional services," the court determines that there are no allegations in the Petition in the Underlying Lawsuit that could bring the allegations within the coverage of the Policy.  Even construed liberally, and resolving all doubts in favor of the insured, the allegations of assault and non-consensual sex in the Petition do not relate to the rendering of professional services, as the alleged assault and non-consensual sex bore no connection to "the rendering of medical, surgical, dental, or nursing services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insured's practice as a licensed health care provider."  Pl.'s

**Memorandum Opinion and Order - Page 11**

Summ. J. App. 21 (Endorsement 828).  Further, as MedPro points out, case law supports the court's

decision.  In *Cluett v. Medical Protective Company*, 829 S.W.2d 822 (Tex. App.—Dallas1992, writ

denied), interpreting a similar insuring clause in a professional liability insurance policy, the court

held: "[S]exual contact between a physician and patient will not be considered by the courts to have

arisen out of the rendition of professional services unless the patient is receiving psychotherapeutic

treatment involving the transference phenomenon."  *Id.* at 828.  As described in *Cluett*:

> The transference phenomenon occurs in the relationships of psychiatrists,
> psychologists, therapists, and similar professionals with their patients.  Transference
> is the process whereby the patient displaces onto the therapist feelings, attitudes and
> attributes which properly belong to a significant attachment figure of the past,
> usually a parent, and responds to the therapist accordingly.

*Id.* (internal punctuation and citation omitted).

The allegations in the Underlying Lawsuit are that Dr. Turner was Karimian's "primary care

physician," and she was his patient for over ten years.  *See* Pl.'s Summ. J. App. 46, Pet. ¶ 7.  There

are no allegations that would lead the court to conclude that Karimian was receiving

"psychotherapeutic treatment involving the transference phenomenon" as described in *Cluett*.[4]

Additionally, the court rejects Dr. Turner's attempt to rely on an exclusion to meet his burden

of establishing coverage under the terms of the Policy.  Specifically, Dr. Turner relies on Exclusion

No. 2 in the Policy, an exclusion that takes away coverage for indemnity benefits if liability is based

on a "criminal act or willful tort or sexual act" by a doctor.  Dr. Turner's argument misconstrues the

function of exclusions in insurance policies. As stated by the Texas Supreme Court:

---

[4] The court also rejects Dr. Turner's argument that although the sexual assault might fall outside the scope of
coverage, the prior physical assault might be covered.  *See* Def.'s Resp. Br. 8-9.  As MedPro correctly argues: "Dr.
Turner fails to cite a single fact, or a single case, that would satisfy his burden of proving that, when Mrs. Karimian came
to his office to get a prescription re-filled, his 'professional services' to her might 'potentially' include physically
assaulting her to the point that she lost consciousness."  Reply 8.  Further, Dr. Turner's attempts to distinguish *Cluett*
are unpersuasive.  *See* Def.'s Resp. Br. 6-9.

**Memorandum Opinion and Order - Page 12**

Initially, the insured has the burden of establishing coverage under the terms of the policy. If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion. If the insurer proves the exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage.

*Gilbert Texas Const.*, 327 S.W.3d at 124 (internal citations omitted). Because Dr. Turner has failed to show that the claim in the Underlying Lawsuit is for "professional services" rendered, and thus within the scope of the insuring clause, a condition precedent to coverage, and any exclusion is immaterial to the court's analysis. *See id.*

In short, the court holds that Harimian's allegations that Dr. Turner physically and sexually assaulted her fall outside the scope of the Policy's coverage. Dr. Turner has failed to raise a genuine dispute of material fact that the alleged conduct constituted the rendition of a "profession service," as defined in the Policy, and therefore MedPro is entitled to judgment as a matter of law on its declaratory judgment claim that it has no duty to defend Dr. Turner in the Underlying Lawsuit.

### 4.     *The Duty to Indemnify*

In support of its motion for summary judgment on the duty to indemnify, MedPro argues that, for the same reasons it has no duty to defend, "there is absolutely no possibility that MedPro will ever have a duty to indemnify." Pl.'s Mot. Summ. J. 8. Dr. Turner argues that MedPro's "claim that it has no duty to indemnify [him] is not yet justiciable or ripe for adjudication[.]" Def.'s Resp. Br. 1.

As already stated above, *see supra* Sec. II.B.1, unlike the duty to defend, which is "strictly circumscribed by the eight-corners doctrine, it is well established that the facts actually established in the underlying suit control the duty to indemnify." *D.R. Horton-Texas*, 300 S.W.3d at 74 (Tex. 2009) (internal quotation marks and citation omitted). Further, though indemnity can generally not

be ascertained until conclusion of the underlying litigation, "[t]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend will likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Cnty. Mut. Ins. Co.*, 955 S.W.2d at 84 (Tex. 1997). In a later decision, the Texas Supreme Court examined this reasoning:

> In *Griffin*, the issue was whether the facts developed in the underlying tort suit for injuries caused by a drive-by shooting could form the basis for coverage under an automobile insurance policy.  We explained in that case that no "facts can be developed in the underlying tort suit that can transform a drive-by shooting into an auto accident."  In that scenario, "[t]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend will likewise negate any possibility the insurer will ever have a duty to indemnify." This conclusion was grounded on the impossibility that the drive-by shooting in that case would be transformed by proof of any conceivable set of facts into an auto accident covered by the insurance policy.

*D.R. Horton-Texas*, 300 S.W.3d at 744-45 (citing *Griffin*, 955 S.W.2d at 84) (internal citations omitted).  Similarly, in this case, the court can conceive of no set of facts that could be developed in the Underlying Lawsuit that would transform allegations of physical and sexual assault of an unconscious patient by her doctor into a claim involving the rendition of "professional services" by a doctor, a requirement for coverage under the Policy.

In short, the court holds that the same reasons that negate MedPro's duty to defend in this case likewise negate the possibility that MedPro will ever have a duty to indemnify Dr. Turner in connection with the Underlying Lawsuit.  Dr. Turner has failed to raise a genuine dispute of material fact that MedPro's duty to indemnify him cannot be adjudicated at this juncture, and therefore MedPro is entitled to judgment as a matter of law on its declaratory judgment claim that it has no duty to indemnify Dr. Turner.

**Memorandum Opinion and Order - Page 14**

III.     **North Texas Family Practice Assoc., P.A.'s Motion to Dismiss**

On March 31, 2105, NTFPA filed a motion to dismiss this case pursuant to Federal Rule of

Civil Procedure 12(b)(1), arguing that there is no justiciable controversy against it, or, alternatively,

pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that MedPro has failed to state a claim

against it with respect to either a duty to defend or indemnify. In response, MedPro argues that

NTFPA's conduct and representations have made it a proper party in this declaratory judgment

action such that the court should declare that MedPro has no duty to defend or indemnify NTFPA

in connection with the Underlying Lawsuit.  Prior to addressing the parties' arguments, the court sets

forth the applicable legal standards.

A.     **Subject Matter Jurisdiction**

A federal court has subject matter jurisdiction over civil cases "arising under the

Constitution, laws, or treaties of the United States," or over civil cases in which the amount in

controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship

exists between the parties.    28 U.S.C. §§ 1331, 1332.  Federal courts are courts of limited

jurisdiction and must have statutory or constitutional power to adjudicate a claim.  *See Home

Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Absent

jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and

must dismiss an action if subject matter jurisdiction is lacking.  *Id.*; *Stockman v. Federal Election

Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d

222, 225 (5th Cir. 1994)).  "[S]ubject-matter jurisdiction cannot be created by waiver or consent."

*Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

### 1.    *Fed. R. Civ. P. 12(b)(1)*

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted).  Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue.  *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986).  All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

### 2.    *The Doctrine of Justiciability*

"In a case of actual controversy within its jurisdiction," the Declaratory Judgment Act allows a federal court to, "declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a).   Under the federal Declaratory Judgment Act, a "federal court has the competence, but not the duty, to declare rights." *American Constr. Benefits Grp., LLC v. Zurich American Ins. Co.*, 2014 WL 144974, at *2 (N.D. Tex. Jan. 15, 2014) (Fitzwater, J.) (citing *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)).  The controversy must be of "a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936).  The Fifth Circuit "interprets the § 2201 'case or actual controversy' requirement to be coterminous with Article III's 'case or controversy' requirement." *Hosein v. Gonzalez*, 452 F.3d 401, 403 (5th Cir. 2006) (per curiam) (citations omitted).  "Declaratory judgments are typically sought before a completed 'injury-in-fact' has

occurred but still must be limited to the resolution of an 'actual controversy.'" *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (citations omitted).   The doctrine of ripeness "originate[s] in Article III's 'case' or 'controversy' language[,]" and is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]" *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (citation omitted).   In determining whether a case is ripe, "[t]he key considerations are fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (citation omitted).   "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Id.* (citation omitted).

"Merely satisfying the minimum standards of Article III, however, does not entitle a party to a declaratory judgment.   In a diversity case, where the claims are based on state law, the relief sought must be available under state law." *Klein v. O'Neal, Inc.*, 2009 WL 3573849, at *3 (N.D. Tex. Oct. 30, 2009) (Fitzwater, J.); *see also Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka*, 267 F. Supp. 2d 601, 630 (E.D. Tex. 2003) ("[S]ince a federal court adjudicating a state-created right solely because of diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State.") (citation omitted); *see generally Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 458 (5th Cir. 2009) (applying Texas law in declaratory judgment action concerning the insurer's duty to defend and indemnify).

**B.     Analysis**

NTFPA argues that there is no justiciable or ripe controversy between it and MedPro because NTFPA is not an insured under the Policy that is the subject of this declaratory judgment action or

a party to the Underlying Lawsuit.  NTFPA Mot. to Dis. 5-6.  In response, MedPro argues that NTFPA's conduct and representations have made it a proper party in this declaratory judgment action.  Pl.'s Resp. 6.  Specifically, MedPro points to a letter from counsel for Dr. Turner and NTFPA to MedPro tendering notice of the Underlying Lawsuit, in which counsel states: "Although NTFPA has not been named as a Defendant [in the underlying lawsuit] at this time, it is vicariously liable for the acts of Dr. Turner who is an insured under the above named policy." Appendix to Pl.'s Resp., Ex. 2.

As already stated, *see supra* Sec. II.B.1, Texas courts apply the "eight-corners" rule, under which the duty to defend is determined solely by reference to the facts alleged in the state court petition and the terms of the policy.  As NTFPA correctly notes, it is not a party to the Underlying Lawsuit and it is not an insured under the Policy.  Because the court cannot determine MedPro's duty to defend NTFPA before any lawsuit has been filed against it, the court concludes that any such claim is not ripe.  Otherwise stated, without an underlying lawsuit in which NTFPA is a party, there is no third-party pleading upon which the court can predicate its judgment.  *See generally American Constr. Benefits Grp.,* 2014 WL 144974, at *3 ("Texas cases addressing the insurer's duty to defend assume that a third-party lawsuit exists and is part of the record . . . This makes sense because, if the record does not contain the third-party pleading, the court lacks one of the two necessary components for applying the eight-corners rule[.]") (citations omitted).  Absent allegations in a third-party complaint against NTFPA, any declaration regarding NTFPA's duties are not ripe.

**Memorandum Opinion and Order - Page 18**

For these reasons, the court concludes that MedPro has failed to establish a justiciable claim against NTFPA.  Accordingly, the court grants NTFPA's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).[5]

## IV.    Interested Party Haleh Karimian

MedPro has included Karimian, the plaintiff in the Underlying Lawsuit, as in interested party in its declaratory judgment action.  *See* Compl. (Doc. 1).  In her Answer, Karimian asks the court to enter judgment that MedPro take nothing and dismiss its lawsuit with prejudice.  *See* Interested Party Haleh Karimian's Ans. (Doc. 5).  The court notes that, unlike NTFPA, Karimian has not filed a motion to dismiss in this action.  While MedPro's pleadings are not entirely clear as to the basis for seeking declaratory relief against Karimian, the court need not linger on this issue, as MedPro has failed to allege any hardship that would result should this court exercise its discretion to withhold consideration of any such dispute.  *See Choice Inc. of Texas*, 691 F.3d at 715 (holding that in determining whether a case is ripe, "[t]he key considerations are fitness of the issues for judicial decision *and the hardship to the parties of withholding court consideration.*") (citation omitted) (emphasis added).   Because MedPro has failed to allege any hardship that would result were this court to withhold consideration of any dispute between it and Karimian, the court declines to consider MedPro's declaratory judgment action against Karimian.  Further, absent allegations of hardship, MedPro's declaratory judgment action against Karimian is not justiciable, and should

---

[5] Alternatively, even were MedPro's declaratory judgment action ripe as to NTFPA, the court would nevertheless grant NTFPA's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), finding that MedPro has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To reiterate, NTFPA is neither a party to the Underlying Lawsuit nor an insured under the Policy.  The only allegation in this declaratory judgment action pertaining to NTFPA is that it is the employer of Dr. Turner.  *See* Compl. ¶ 7.  As NTFPA correctly argues, "under the legal standards governing the scope of the duty to defend and the duty to indemnify under Texas law," "there is no basis asserted for stating a claim against NTFPA merely because it is Dr. Turner's employer."  NTFPA Mot. to Dis. 9.

accordingly be dismissed without prejudice.  *See Choice Inc. of Texas*, 691 F.3d at 715 (stating that even when case requires no further factual development, a plaintiff must still show hardship to establish ripeness of declaratory judgment action).

## V.    Conclusion

For the reasons herein stated, the court determines that no genuine dispute of material fact exists as to whether Plaintiff MedPro has a duty to defend or indemnify Defendant Dr. Turner under the Policy, and MedPro is entitled to judgment as a matter of law.  Accordingly, the court **grants** Plaintiff's Motion for Summary Judgment (Doc. 11), and hereby **declares**:

(i)     That the claims asserted against Defendant Dr. Turner in the lawsuit styled *Haleh Karimian v. David L. Turner, M.D.*, Cause No. CC-14-03908-A, pending in the County Court at Law No. 1 of Dallas County, Texas (the "Underlying Lawsuit"), are not within the scope of coverage provided under the Policy;

(ii)    That Plaintiff MedPro has no duty to defend Defendant Dr. Turner in the Underlying Lawsuit; and

(iii)   That Plaintiff MedPro has no duty to indemnify Defendant Dr. Turner for any settlement or judgment relating to the claims asserted against him in the Underlying Lawsuit.

Further, the court determines that Plaintiff MedPro has failed to establish a justiciable or ripe controversy against Interested Party NTFPA in this declaratory judgment action.  Accordingly, the court **grants** North Texas Family Practice Assoc., P.A.'s Motion to Dismiss (Doc. 9).  All claims against NTFPA are hereby **dismissed without prejudice** for want of subject matter jurisdiction. Finally, the court, in the exercise of its discretion under the federal Declaratory Judgment Act, declines to issue MedPro declaratory relief as against Interested Party Karimian.  All claims against

**Memorandum Opinion and Order - Page 20**

Karimian are hereby **dismissed without prejudice**. As required, a final judgment will issue separately pursuant to Federal Rule of Civil Procedure 58.

It is so **ordered** this **10th day** of **June, 2015.**

Sam A. Lindsay
United States District Judge